IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


**BILLY D. COOPER**                                                                    **PETITIONER**

**VS.**                                              **CIVIL ACTION NO. 4:05-CV-157WHB**
                                                     **CRIMINAL NO. 4:01-CR-8WHB**

**UNITED STATES OF AMERICA**                                                           **RESPONDENT**

<u>**OPINION AND ORDER**</u>

    This cause is before the Court on the Motion of Petitioner Billy Cooper to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion to Vacate").[1] Having considered the Motion, Response, Traverse and all other relevant documents, as well as supporting and opposing authority, the Court finds that the Motion is not well taken and should be denied.[2]

---

[1] Petitioner is proceeding in this case *pro se*; therefore, his pleadings must be liberally construed. <u>Pena v. United States</u>, 122 F.3d 3, 4 (5th Cir. 1997).

[2] In light of Petitioner's ineffective assistance of counsel claims, the Court ordered Petitioner's former counsel, Joe Hollomon and Larry Yarbrough, to submit affidavits addressing the claims made by Petitioner in his Motion to Vacate. <u>See</u> Order, filed October 27, 2005. Petitioner also moved on three separate occasions to supplement his Motion to Vacate. <u>See</u> Motions filed under docket entry nos. 387, 396 and 406. The Court granted two of the three Motions, docket entry nos. 387 and 406. <u>See</u> Opinion and Order, dated December 20, 2005 (docket entry no. 401) and Opinion and Order, dated June 29, 2006 (docket entry no. 417). The Court will consider this supplemental information in deciding the instant Motion to Vacate.

## I.  Factual Background and Procedural History

Petitioner Billy Cooper brings this habeas corpus action after being convicted and sentenced to life imprisonment by this Court for various federal laws violations related to a double homicide. On the evening of April 13, 1999, Cooper and co-defendant James Frye carjacked and then killed Willie Hatten and Lottie Anderson Marshall in Jones County, Mississippi. Cooper and Frye then buried the bodies of the victims in an oilfield in Jasper County, Mississippi.[3] The next day, the two assailants drove the vehicle that they had stolen from Marshall to New Orleans, Louisiana, where they burned it. The bodies were eventually discovered by law enforcement officials, with the hands severed from one of the bodies and the hands and head severed from the other.

Cooper was indicted and on April 30, 2002, found guilty by a jury of the following offenses:

Count 1: conspiracy to commit: carjacking in violation of 18 U.S.C. § 2119(3), use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c), and transportation of a stolen vehicle in interstate commerce in violation of 18 U.S.C. § 2312, all in violation of 18 U.S.C. § 371;

Count 2:  carjacking in violation of 18 U.S.C. §§ 2119(3) and 2;

---

[3] Frye would later dig up the two bodies and re-bury them in another area of the oilfield.

Count 3:   use of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2;

Count 4:   transportation of a stolen vehicle in interstate commerce in violation of 18 U.S.C. §§ 2312 and 2; and

Count 5:   being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Because the carjacking resulted in the death of Hatten and Marshall, Cooper was eligible for the death penalty under § 2119(3). Upon considering whether Cooper should be sentenced to death on Count II, the jury determined that the death penalty should not be imposed. Cooper was sentenced by this Court on July 29, 2002, to life imprisonment without the possibility of parole on Count 2; ten years on Count 3 (to run consecutive with the sentence imposed on Counts 1, 2 and 4); fifty-seven months on Counts 1 and 4 (to run concurrent with one another, but consecutive with the sentence imposed on Counts 2 and 3); three years of supervised release on Count 1 and 4; five years of supervised release on Count 3 (to run concurrent with the sentence imposed on Count 1 and 4); a $3,000 fine; and a $300 special assessment. On direct appeal, the United States Court of Appeals for the Fifth Circuit, on July 17, 2003, upheld Cooper's conviction. Cooper then filed a petition for certiorari with the Supreme Court of the United States, which was denied on November 2, 2004.

Cooper filed the instant 28 U.S.C. § 2255 Motion to Vacate in this Court on September 30, 2005, asserting numerous claims of ineffective assistance of counsel and two due process violation claims. Cooper also requests an evidentiary hearing on the Motion. The Court will now consider Cooper's Motion to Vacate.

## II. Evidentiary Hearing

The Court must first consider whether an evidentiary hearing is warranted in this case. After considering the record in this case and all pleadings related to Cooper's Motion to Vacate, the Court finds that an evidentiary hearing is unnecessary and thus denies Cooper's request for a hearing.

## III.  Ineffective Assistance of Counsel

**A. Legal Standard**

The standard by which to measure an ineffective assistance of counsel claim in a habeas proceeding was set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  The Strickland Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death

4

> sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687.

Applying the Strickland tests, a federal court must consider whether the attorney's representation was reasonable under all of the circumstances presented by the trial and other relevant proceedings. Strickland, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The burden is on the defendant to "show that there is a *reasonable probability*[4] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 (emphasis added; footnote added).

**B. Analysis**

**1. Whether Counsel Failed to Adequately Present Cooper's Fourth Amendment Claims**

Cooper's first claim of ineffective assistance of counsel pertains to counsel's representation on Fourth Amendment issues. Specifically, Cooper argues that counsel was deficient in not adequately arguing that probable cause did not exist to arrest him, not moving to suppress certain demonstrative evidence, and in not moving for a hearing pursuant to Franks v. Delaware, 38 U.S. 154 (1978) ("Franks hearing"). The Court will now address each sub-argument made by Cooper under this first claim.

---

[4] The Strickland Court rejected the "more likely than not" standard of proof as too burdensome. Strickland, 466 U.S. at 493.

### a. Probable Cause to Arrest

Throughout the first claim of his Motion to Vacate, Cooper argues that counsel provided insufficient representation in not successfully moving to have his arrest invalidated, which would have led to the suppression of Cooper's confession. Prior to trial, Cooper's counsel moved to suppress a confession Cooper gave police on August 20, 1999, arguing that Cooper was arrested without probable cause, was arrested pursuant to an unlawful "John Doe" warrant, and alternatively, that the confession was made involuntarily. After holding a suppression hearing, this Court determined that Cooper was lawfully arrested and that the confession should not be suppressed.

Much of Cooper's argument regarding probable cause to arrest does not address ineffective representation, but is merely an attempt to re-litigate whether the arrest was valid. A § 2255 petitioner, however, cannot re-litigate an issue that was raised and decided on direct appeal. <u>United States v. Rocha</u>, 109 F.3d 225, 229 (5th Cir. 1997). The validity of the arrest and the voluntariness of the confession were addressed by the Fifth Circuit on direct review and this Court's findings were affirmed. Thus, Cooper is barred from re-litigating the merits of his Fourth Amendment claims.

The only remaining arguments of deficient representation made by Cooper is that counsel failed to subpoena or call certain

witnesses at the suppression hearing. Typically, "complaints of uncalled witness[es] are disfavored as a source of Strickland habeas review." United States v. Harris, 408 F.3d 186, 190 (5th Cir. 2005) (citations omitted). Cooper fails to demonstrate that counsel knew what these witnesses might testify to or that the decision not to subpoena the potential witnesses was not strategic. The Court therefore is unable to find that counsel acted unreasonably in deciding not to call the potential witnesses. Even if counsel should have called these witnesses, the Court does not believe, based on the would-be testimony of the potential witnesses that Cooper sets forth in his supplement to the Motion to Vacate (docket entry no. 406), that the outcome of the suppression issue would have been different if the potential witnesses had testified. Thus, Cooper fails to satisfy either prong of Strickland on this sub-claim.

### b. Suppression of Demonstrative Evidence

Next, Cooper contends that counsel was ineffective in not moving to suppress the photographs of the victims' bodies, the firearm, or photographs of the vehicle. Cooper first urges that the photographs of the bodies should have been suppressed because law enforcement officials did not have a warrant to search the private property where the bodies were found. The bodies of the victims in this case were discovered in an oilfield in Jasper County, Mississippi, and not on property owned or occupied by Cooper.

Because Cooper was not the owner of the property, he lacked standing to contest the search and therefore counsel had no legal basis to move to suppress the photographs of the victims' bodies. Rakas v. Illinois, 439 U.S. 128, 133, 99 S.Ct. 1642, 68 L.Ed.2d 38 (1991).

As to the firearm, Cooper argues that there was inconclusive proof that the firearm admitted into evidence was the actual weapon used to commit the crime of violence.[5] The Court, however, finds that there was a sufficient foundation developed by the Government to conclude that the firearm admitted at trial was in fact the firearm used in the murder of the two victims. Therefore, the firearm was relevant and admissible at trial.

Cooper also argues that counsel should have contested the admissibility of the photographs of the stolen vehicle.[6] Because there was never a "stolen vehicle" report, Cooper reasons that the Government failed to prove that a vehicle was ever stolen – an element of 18 U.S.C. § 3212. The Court, however, has found no caselaw or statute that requires a stolen vehicle report to prove that a vehicle was stolen under § 3212, and there was sufficient

---

[5] As the Government correctly points out, this issue of whether the gun should have been admitted is an evidentiary issue that is unrelated to the Fourth Amendment.

[6] The Court notes that this sub-issue is also unrelated to the Fourth Amendment.

evidence produced at trial to conclude that the vehicle recovered in New Orleans, Louisiana was in fact stolen.

Accordingly, the Court finds that representation by his counsel was not objectively unreasonable as to their decision not to seek suppression of the photographs of the victims' bodies, the firearm, and the photographs of the stolen vehicle.

### c. *Franks* hearing

Cooper next avers that counsel was incompetent in not calling for a *Franks* hearing. A *Franks* hearing is held where the trustworthiness of an affidavit used to obtain a warrant is called into question. *Franks*, 438 U.S. at 156. A warrant, however, was not used to detain Cooper or to conduct a search. Therefore, counsel had no reason to request a *Franks* hearing.

Within this same sub-argument, Cooper again raises issues regarding the validity of his detention and the voluntariness of his confession that were addressed during the suppression hearing and also on direct appeal and therefore cannot be re-litigate on habeas review. *Rocha*, 109 F.3d at 229.

Accordingly, Cooper is unable to prove that he was afforded ineffective assistance of counsel regarding any Fourth Amendment or other evidentiary issues.

### 2. Whether Counsel Provided Deficient Representation in Failing to Move to Dismiss the Indictment Due to Perjury Before the Grand Jury

Cooper next argues that his counsel were ineffective in not moving to dismiss the indictment against him because Sergeant Tyrone Stewart perjured himself during grand jury proceedings and further because the Government was aware of the perjury. Although Cooper cites specific portions of the grand jury transcript to support his claim, he fails to explain how Stewart perjured himself through that testimony. No other testimony given by Stewart throughout this case appears to be contradictory to the excerpts of the grand jury proceeding relied on by Cooper. The Court therefore finds that counsel had no reason to believe that Stewart had committed perjury and thus no grounds to move to dismiss the indictment. Accordingly, Cooper's Motion fails on this second claim.

### 3. Whether Counsel Provide Ineffective Assistance in Failing to Object to Violations of the Confrontation Clause

Next, Cooper urges that counsel performed deficiently in failing to object to violation of the Confrontation Clause of the Sixth Amendment. Citing <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed2d 177 (2004) (holding that out-of-court testimonial is inadmissible under the Sixth Amendment unless the declarant is unavailable and the defendant had opportunity on prior occasion to cross-examine the declarant), Cooper argues that counsel should have objected on Confrontation Clause grounds to the videotape confession of co-defendant James Frye as well as

statements of Investigator Stewart that were impregnated with hearsay statements.

At trial, counsel objected to the introduction of the Frye videotape confession into evidence because it violated the Confrontation Clause, and the Fifth Circuit specifically addressed this issue on direct appeal.  Moreover, Cooper admits in his Traverse that <u>Crawford</u> was unavailable to counsel at trial and on direct review to the Fifth Circuit as the opinion was not rendered by Supreme Court unit March 8, 2004. Therefore, counsel cannot be faulted for failing to rely on <u>Crawford</u> in having Frye's out of court statements or any other out of court statements suppressed. <u>See</u> Traverse, p. 22.   Thus, Cooper's claim of ineffective assistance of counsel regarding the Confrontation Clause is without merit.

### 4. **Whether Counsel was Ineffective for not Invoking the "Rule" at Arraignment**

Cooper next argues that counsel was inadequate because they failed to invoke the "Rule" pursuant to Rule 615 of the Federal Rules of Evidence at his arraignment hearing before United States Magistrate Judge Alfred Nicols on April 25, 2001. Specifically, Cooper believes that Michael O'Neil Green, a Government witness at Cooper's trial, should have been sequestered during Cooper's arraignment. According to Cooper, Green was arraigned on unrelated charges at the same time as Cooper and was present during Cooper's

arraignment. Green eventually testified against Cooper at trial, alleging that Cooper confessed to him in June of 2001, while the two were incarcerated together, that he [Cooper] had committed the crimes. Because Green was in the courtroom when Cooper was arraigned on April 25, 2001, Cooper urges that Green learned information at the arraignment that affected his testimony at trial.

Rule 615 states, in pertinent part, that "[a]t the request of a party the court shall order *witnesses* excluded so that they cannot hear the testimony of other witnesses." (Emphasis added). Green was not a witness at the April 25, 2001, arraignment of Cooper; therefore, counsel had no reason at that time to invoke the "Rule." Further, counsel had no reason to believe at the time of Cooper's arraignment that Green would eventually testify against Cooper.

Although unrelated to invocation of the "Rule," Cooper also argues that counsel was deficient in not moving to suppress any statements by Green regarding Cooper's confession because the Government used Green as an informant to "deliberately elicit" the confession outside the presence of counsel. In United States v. Henry, 447 U.S. 264, 272-75, 100 S.Ct. 2138, 65 L.Ed.2d 115 (1980), the Supreme Court determined that the Sixth Amendment precludes the Government from using a paid cell mate informant to deliberately elicit incriminating statements from a defendant, outside the

12

presence of counsel. Cooper, however, fails to provide any evidence and gives no explanation for why he even believes that the confession was deliberately elicited by the Government through Green.

The Court therefore concludes that counsel's representation was not objectively unreasonable in choosing not to invoke the "Rule" at Cooper's arraignment or moving to suppress Cooper's confession to Green.

### 5. Whether Counsel was Ineffective for Failing to Object to Jury Instructions at the Sentencing Phase

Cooper's next claim of inadequate representation pertains to a jury instruction given by the Court in the penalty phase of Cooper's trial. Cooper believes that counsel should have objected to the jury instruction which advised the jury that they must choose between life imprisonment or death on Count II (carjacking). Contending that a lesser form of punishment was available, Cooper argues that counsel should have objected to the instruction.

The Court, however, did not err in instructing the jury that life imprisonment and death were the only two available sentences on Count II. The Federal Sentencing Guidelines, which were mandatory at the time of Cooper's conviction, mandated that, under the circumstances, Cooper be sentenced to no less than life

imprisonment on Count II.[7] Thus, the Court concludes that Cooper's counsel did not act unreasonably in not objecting to the jury instruction regarding sentencing on Count II.

Alternatively, the Court notes that Cooper does not contend that he was improperly sentenced by the Court to life imprisonment on Count II. Assuming *arguendo* that the instruction on Count II was erroneous and that counsel should have objected to the instruction, there was no prejudice that resulted to Cooper as a result of the instruction.

The Court therefore concludes that Cooper fails to overcome either prong of the Strickland inquiry regarding counsel's failure to object to the Count II jury instruction.

### 6. Whether Counsel was Ineffective in Failing to Raise the Instant Claims on Direct Appeal

Cooper's final claim of ineffective assistance of counsel is that counsel failed to raise on direct appeal all arguments raised by Cooper in the instant Motion. However, as the Court determines in this Opinion and Order, all claims raised by Cooper in the

---

[7] The federal sentencing guidelines are of course no longer mandatory. United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). However, Booker was not decided until January 12, 2005, after Cooper's conviction became final on November 2, 2004, when the Supreme Court denied his petition for certiorari. Therefore, the holding of Booker is inapplicable to Cooper's sentence as Booker cannot be applied retroactively on collateral review. In re Elwood, 408 F.3d 211, 213 (5th Cir. 2005).

Motion to Vacate are without merit. Accordingly, Cooper did not receive deficient representation on direct appeal.

## IV. Due Process

The Court will now consider Cooper's claims that his due process rights were violated by the Government. Cooper argues that the Government's failure to disclose a "deal" with a witness and its use of "conflicting theories" during his trial and the trial of his co-defendant James Frye run afoul of due process.[8]

**A. Whether the Government Violated Cooper's Due Process Rights by Failing to Disclose a "Deal" with Witness Mary Dean**

Cooper first argues that he sustained a breach of his due process rights when the Government failed to disclose that it had struck a "deal" with Mary Dean, Cooper's ex-girlfriend and a witness at his trial. Cooper essential alleges a violation of the rule announced in <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is <u>*material*</u>" (emphasis added)).

---

[8] Cooper summarily raised the issue of "conflicting theories" in footnote eleven to his Motion to Vacate. However, in his November 7, 2005, Motion to for Nunc Pro Tunc Relation Back to Initial Pleadings(docket entry no. 387), which was unopposed by the Government and granted by the Court, Cooper clarified his "conflicting theories" claim. Cooper later expounded on his legal arguments to this claim in his Motion for Clarification of Nunc Pro Tunc Relation Back to Initial Pleadings ("Motion to Clarify"; docket entry no. 406), which was also granted by the Court. The Government's response to this claim is found in its Response to Cooper's Motion to Clarify (docket entry no. 408).

At Cooper's trial, Dean testified that although she was unaware of the murders at the time, she accompanied Cooper and Frye to New Orleans to destroy the car that the two assailants had stolen from Marshall. Dean further testified that after returning from New Orleans, she drove Cooper and Frye to a wooded area to dispose of a "black bag" that smelled like "dead people." She also stated during direct examination that Frye eventually admitted to her that he and Cooper had killed Marshall and Hatten.

Cooper now contends that the Government cut a deal with Dean in exchange for her testimony. He alleges that he had a conversation with Frye's counsel, Cynthia Stewart, in January 2005 and that Stewart informed him that Dean received a deal. In light of the allegations, the Court ordered Stewart to respond to these allegations through affidavit. See Order, dated June 6, 2006. In her affidavit, which was submitted on July 13, 2006 (docket entry no. 419), Stewart states that she did in fact meet with Cooper to discuss Frye's case, but that she does not recall any discussion of Dean during their meeting. However, Stewart did attach as an exhibit to her affidavit a transcribed telephone conversation between her and Dean's former attorney, Ronald Parish, which took place during her preparation for Frye's trial. Exhibit "B" to Stewart Affidavit. Based on that conversation, there is some indication a state court charge of accessory after the fact against Dean was dropped in return for her testimony in Cooper's trial.

16

The Government asserts in its Response to the Motion to Vacate that there was never a deal and further states that it complied with the discovery Order entered by the Magistrate Judge in this case, which required the Government to disclose any such agreement. Dean also testified at Cooper's trial that she did not make a deal with the Government for her testimony.

Dean was never charged with a violation of federal law. Thus, there was clearly no promise for leniency by the Government on federal charges in exchange for her being a witness at Cooper's trial. Although there is some evidence that the state court charges against Dean were dropped in exchange for testimony in this case, any such deal would have inevitably been offered by the state district attorney prosecuting Dean's case in state court, not by United States attorneys. And, even if the state prosecutor and Dean had an agreement, there is no evidence that the Government was aware of it.

Assuming *arguendo* that Cooper could prove that there was an undisclosed deal that the Government had knowledge of, the Court does not believe that the existence of such deal presents <u>material</u> evidence as is required to sustain a <u>Brady</u> violation. "For cases involving prosecutorial failure to disclose favorable evidence to the accused (such as the impeachment evidence at issue here), '[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different.'" <u>United States v. Washington</u>, 44 F.3d 1271, 1281 (5th Cir. 1995) (brackets and parenthesis in original) (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985)). Considering the record as a whole in this case, this Court finds that if an undisclosed deal between Dean and the Government did exist, that evidence would have been insufficient to change the results of Cooper's trial. The Court therefore concludes that there was not a <u>Brady</u> violation by the Government and thus no due process violation.

### B. Whether the Government Violated Cooper's Due Process Rights by Using "Conflicting Theories"

Finally, Cooper claims that the Government improperly proceeded during his trial under the theory that he [Cooper] was the "shooter," while at the same time, identifying Frye as the "shooter" at Frye's trial. Cooper contends that this conflicting theory of whom the "shooter" was is a due process violation.

The Fifth Circuit has clearly established that "a prosecutor can make inconsistent arguments at the separate trials of co-defendants without violating the due process clause." <u>Beathard v. Johnson</u>, 177 F.3d 340, 348 (5th Cir. 1999) (citing <u>Nichols v. Scott</u>, 69 F.3d 1255 (5th Cir. 1995)). Based on <u>Beathard</u>, the Government did not act improperly in arguing that Cooper was the shooter at his trial while also arguing that Frye was the shooter

at his trial. Cooper's "conflicting theory" due process claim is, therefore, not well taken.

### V. Conclusion

Based on the application of the law to the facts of the case *sub judice*, this Court finds that the legal process by which Cooper was convicted and sentenced was constitutionally valid. Accordingly, the Motion to Vacate of Petitioner Billy Cooper is not well taken and should be denied.

IT IS THEREFORE ORDERED that the Motion of Petitioner Billy Cooper to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [docket entry no. 358] is hereby denied.

SO ORDERED this the 24th day of July, 2006.


s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

blj